### *In re* BOARD OF RAPID TRANSIT RAILROAD COM'RS.

(*Supreme Court, General Term, First Department.* April 4, 1892.)

1. EMINENT DOMAIN—"RAPID TRANSIT" ACT—OBTAINING CONSENT OF OWNERS.
   It was not intended by the legislature, in the passage of the New York city rapid transit act, (Laws 1891, c. 4,) that the rapid transit commissioners should present to each property owner the maps, reports, and statements adopted by them before asking his consent to the adopted plan.

2. SAME—PLACE FOR INSPECTING PLANS.
   Public notice of their proposed action on the submitted plans having been given by the commissioners and common council, and the plans in question having been accessible to property owners, the fact that no definite place was fixed where the plans might be inspected was no ground of objection to the report of the commissioners.

3. SAME—APPROVAL OF REPORT BY COMMON COUNCIL—AYES AND NOES.
   In the absence of evidence to the contrary it will be presumed that a vote by ayes and noes was taken by the common council in approving the report of the rapid transit commissioners, as required by the rapid transit act.

4. SAME—SUFFICIENCY OF REPORT—GENERAL PLAN OF CONSTRUCTION.
   Section 4 of the rapid transit act provides that, if the commissioners shall determine that a rapid transit railway is necessary, they shall proceed to establish the route thereof and the general plan of construction, and that such general plan shall show the general mode of operation, and contain such details as to the manner of construction as may be necessary to show the extent to which any street is to be encroached upon and the property thereon affected. *Held* not necessary that such plan should state with absolute accuracy the precise amount of encroachment, or the precise locality, where such encroachment might or might not be increased by the erection of structures necessary for the operation of the railroad, and that a plan giving property owners notice of the general character of the encroachments was sufficient. *Cable Co.* v. *Mayor,* 10 N. E. Rep. 332, 104 N. Y. 1, and *In re Kings County El. R. Co.,* 19 N. E. Rep. 654, 112 N. Y. 47, followed.

5. SAME.
   The report and plans as to so much of the railroad as will lie south of Harlem river show what portion of the railroad is to be a viaduct, tunnel, or depressed structure, give the general dimensions of the tunnel and its location, and fix its width and height, and indicate the general character of the viaduct structure in different locations. *Held,* that the report was sufficient as to that portion of the road.

6. SAME—MATERIAL OF CONSTRUCTION.
   The fact that the report does not show of what material, whether of iron or stone, or both, the viaduct is to be composed, is immaterial. *In re Kings County El. R. Co.,* 19 N. E. Rep. 654, 112 N. Y. 47, followed.

7. SAME—UNGRADED STREETS.
   In view of the fact that Laws 1890, c. 545, does not require that the grades of the streets and avenues beyond Harlem river shall be fixed until within 2½ years from January 1, 1891, and that they have not yet been fixed, it was impossible for the commissioners to determine what should be the precise location of the railroad in reference to streets there, and what portions thereof should be in a tunnel, depressed structure, or viaduct. In respect to such streets it was only necessary that the plans should disclose, as far as reasonably practicable, to what extent they were to be encroached upon.

8. SAME—HEIGHT OF VIADUCT.
   The fact that the precise height of the viaduct or depressed structure at each particular place is not shown is no ground of objection to the report, it being im-

possible to show the same without details of the engineer's specifications, which are not required in the general plan.

**9. SAME—LOCATION OF STATIONS.**
The report is not defective in failing to locate the stations along the route of the railroad.  *In re Kings County El. R. Co.*, 19 N. E. Rep. 654, 112 N. Y. 47, followed.

**10. SAME—MOTIVE POWER.**
The report provides that the cars shall be moved by motors within the tunnel, capable of a uniform speed for long distances of not less than 40 miles per hour, exclusive of stops, the power being supplied by some method not requiring combustion within the tunnel, thereby excluding the cable and locomotive as now operated.  *Held* sufficient to give property owners information as to the general mode of operation.

**11. SAME—GENERAL MANNER OF CONSTRUCTION.**
The intent of the provision of the act that the report and plans should show "the general manner of construction" was not that all the details of construction should be included, but that they should convey general information to property owners on that subject.  Therefore the report, showing that the construction below Fourteenth street on the Fourth-Avenue side, and below Thirty-Fourth street on the Broadway side, of the city, should be by under-ground tunneling, without disturbing the streets, except in cases of necessity in certain localities and such other special points as the commissioners during the progress of the work might determine, and that all excavations above Thirty-Fourth street might be made from the surface, was sufficient.

Motion by William Steinway and others, composing the board of rapid transit commissioners of New York city, for the appointment of three commissioners to determine whether a rapid transit railway shall be established. Motion granted.

Argued before VAN BRUNT, P. J., and PATTERSON and O'BRIEN, JJ.

*John M. Bowers*, for petitioners.  *Wheeler H. Peckham*, *William H. Arnoux*, and *Charles H. Knox*, (*F. M. Scott*, *J. A. Deering*, and others, of counsel,) opposed.

VAN BRUNT, P. J.   The board of rapid transit railroad commissioners in and for the city of New York, appointed pursuant to the provisions of Laws 1891, having made their report to the common council of the city of New York, and such report having been adopted by said common council, and having made application for consent to the owners of property abutting upon the proposed routes referred to in said report, and said consent having been refused, make this application to this general term of the supreme court for the appointment of three commissioners, who should determine, after public hearing of all parties interested, whether such railroad ought to be constructed and operated, and report such determination, with the evidence taken by them, to said general term.   Various objections are urged by several counsel who appeared to oppose this application, the most of which are based upon the claim that the general plan of construction adopted by the board of rapid transit commissioners, and which is the basis of the present application, is radically and fatally defective in that it does not show, as to a large part of the contemplated route, whether the railroad is to be an under-ground road, an elevated road, or a depressed road; and that it does not show the manner of construction of so much of the proposed railroad as is to be constructed on a viaduct, or in a depressed structure, or in a tunnel; and that it does not show the extent to which the streets, avenues, and public places in which the said railroad is to be located are to be encroached upon; and that it does not show the mode of operation; and that, therefore, it does not furnish the materials necessary for the formation of an intelligent opinion as to the efficiency of the proposed railroad.   It was also urged by some of the counsel that no proper application was made to the property owners for their consent, because the plans of construction were not presented to each property holder before he was asked to give his consent.   The latter proposition, it seems to us, has no merit, in that it never could have been within the contemplation of the legis-

dature that every property holder should have presented to him maps and reports and statements, showing all that the rapid-transit commissioners have concluded upon, before any valid application for his consent to the projected plan could be made. It seems to us clear that it was sufficient if the commissioners had adopted such a plan, and had given public notice of such adoption, and if the property owner could, by going to the proper office, examine the plan which had been adopted and the maps illustrating the same. It was suggested upon the argument that no definite place was fixed where the property owner might see these plans. But it is evident from the public notices which were given both by the commissioners and the common council in reference to their proposed action upon these plans that there would have been no difficulty in any property owner having access to the same if he desired to do so. In fact we find no property owner who has shown that he has been unable to see the report and plans because of their inaccessibility. It has also been urged that the rapid transit act provides that the adoption by the common council of a resolution approving the plans and conclusions of the rapid transit commissioners, and consenting to the construction of the railway or railways in accordance therewith, shall be by vote taken therein by ayes and noes; and that in the report which gives the proceedings of the common council it does not appear that the ayes and noes were taken on the vote. It does appear that 22 members of the common council voted in favor thereof, and it does not appear the vote was not taken by ayes and noes; and this court cannot assume a fact for the purpose of invalidating the action of the common council.

This brings us to the consideration of the main question which was raised upon the argument of this application, namely, that the general plan of construction adopted by the board of rapid transit commissioners, and which is the basis of the present application, is radically and fatally defective. In the consideration of this question it is necessary to bear in mind some of the differences which exist between the rapid transit act of 1875 and the rapid transit act of 1891. It is urged by the counsel for the objectors that the rapid transit act of 1891 requires more minuteness and greater detail in the description of the location and manner of construction of the railroad than was provided for in the act of 1875. This view, it seems to us, is not borne out by a consideration of the respective provisions of the two acts so far as they relate to the question under discussion. The rapid transit act of 1875 (in section 5) provides as follows: "The said commissioners having by such public notices as they may deem most proper and effective, under such conditions and with such inducements as to them may seem most expedient, invited the submission of plans for the construction and operation of such railway or railways, the said commissioners shall meet at a place and upon a day in such public notice named, not more than ninety days after their organization, and decide upon the plan or plans for the construction of such railway or railways, with the necessary supports, turn-outs, switches, sidings, connections, landing places, stations, buildings, platforms, stairways, elevators, telegraph and signal devices, or other requisite appliances, upon the route or routes and in the locations determined by them." This language has been considered by the courts, and it has been determined within certain limits as to what were essentials or non-essentials in order that a proposed plan for the construction of a railway shall be held to be either obnoxious to or sufficiently accordant with this provision. In *Cable Co.* v. *Mayor*, 104 N. Y. 1, 10 N. E. Rep. 332, Judge RAPALLO examined the question above suggested, and laid down some general rules which were to govern in the consideration of such a question, but how far these rules were concurred in by the court in the disposition of the case seems to be somewhat problematical. Various questions were presented, attacking the organization of the petitioner in the case cited, and Judge RAPALLO said: "To begin at the foundation, I think it incontestable that they [referring to the commissioners] must decide whether the contem-

plated road was to be an under-ground road, an elevated road, or, if I am right in my construction of the act, a surface road.   To leave either of these questions undetermined, and relegate it to the discretion of the directors of the company to be formed, would, in my judgment, be a departure from the act and a failure to comply with one of the conditions precedent to the acquisition of corporate power.   How far further it is essential for the purpose of securing a valid organization, that the commissioners should decide upon plans of construction, it is difficult to determine.   It would be very inconvenient, to say the least, to require that the details of the construction should be prescribed with the minuteness of the usual specifications in a building contract.   There undoubtedly is a line somewhere dividing the essential from the non-essential; but we are not put to the necessity of searching for it in the present case.   It is sufficient for its purposes to hold that as far as reasonably practicable the plans adopted by the commissioners should disclose to what extent the streets are to be encroached upon and the property abutting thereon affected, and the means of transportation to be used, so that the local authorities and the property owners, when applied to for their consents, or the commissioners appointed by the supreme court with authority to consent in their behalf, may have the necessary materials to form an intelligent judgment whether the scheme proposed should or should not be assented to." And it is this language of the learned judge which was imported into the act of 1891.   The learned judge then formulated various propositions as his conclusions, and the fifth was to the effect that "the commissioners have failed to substantially comply with the requirements of section 5 of the act, to decide upon a plan for the construction of the railways and other appliances specified in that section, and that such compliance was essential to their valid organization," in which all the court concurred.   And we are informed by Judge FINCH, in *Re Kings County El. Ry. Co.*, 112 N. Y. 47, 19 N. E. Rep. 654, that their conclusion that the action of the commissioners was not a substantial compliance with the requirements of said section of the rapid transit act rested upon at least two omissions, of the most important and vital character, —one that it was left undetermined for 17 miles of the routes authorized whether the construction should be a surface or an elevated road, and the other that the number of tracks was left unlimited, so that the whole width of the road-way might be occupied by them, and in some streets even a third row of columns might be erected; the court holding that these facts alone established that no definite plan was dictated by the commissioners, but the choice of a plan was substantially left to the corporators.   And in the latter case it was distinctly enunciated that it was not the intention of the court to decide in the *Cable Case* that section 5 of the rapid transit act required the location of the stations and stairways, and the fact was pointed out that if the section compelled the location of stations and stairways it equally compelled that of every column or necessary support of every turn-out or siding, of every connection, of every landing place or platform, and of every telegraph or signal device; and the conclusion of the court seems to have been that a plan of construction which entered into such details as to the manner of construction as might be necessary to show in a general way the extent to which any street, avenue, or public place was to be encroached upon, and the property abutting thereon affected, was a sufficient compliance with the act. Now, the act of 1891 has embodied this conclusion within its provisions, and has expressly eliminated from the preliminary plans the provisions of the act of 1875, respecting supports, turn-outs, switches, landing places, etc., leaving those details to be filled in after it has been finally determined by the appropriate authorities that an attempt to carry out the plan shall be made.   The provisions of section 4 of the act of 1891 are that, if said board shall determine that a rapid transit railway or railways in addition to any already existing are necessary for the interest of the public and such city, it shall proceed to

determine and establish the route or routes thereof, and the general plan of construction, and that such general plan shall show the general mode of operation, and contain such details as to the manner of construction as may be necessary to show the extent to which any street, avenue, or other public place is to be encroached upon, and the property abutting thereon affected. Now, can it be for one moment held that this general language requires greater or more particular specification of details than the language of section 5 of the act of 1875, which provides for a plan or plans for the construction of such railway or railways, with the necessary supports, turn-outs, switches. etc.? It seems to us to be apparent that under the act of 1891 the plan was to be a general one, and that there should be no dispute upon that point. In fact the language is "a general plan of construction." Such plan was required to show the general mode of operation, and to contain such details as to the manner of construction as might be necessary to show the extent of encroachment upon any street or avenue. It certainly could not have been intended by the use of this language to compel the commissioners by these plans to state with absolute accuracy the precise amount of encroachment, or the precise locality where such encroachment might or might not be increased by the erection of structures necessary for the operation of the railroad. The plan was to be a general one, not a plan in detail. The detail plan was provided for by the sixth section of the act, where specifications are spoken of in reference to the construction of this railroad. It would therefore appear that the plan of construction referred to in the fourth section was necessarily general in its character, but must be so prepared as to give the owners of abutting property notice of the general character of the encroachments which were to be made upon their property. And that is what was decided in the case of *Kings County El. Ry. Co.*, above cited; and, if such a general statement was sufficient under the statute of 1875, it must certainly be a compliance with the statute of 1891.

It is urged upon the part of the objectors that the commissioners have not definitely fixed the character of the construction. It is said that they have laid out two routes, which they have described with minute particularity; one running on the west side of the city, and one on the east side. They both cross the Harlem river, and extend to the city line, running in that part of the city north of that river as well as in the older parts, chiefly through and along streets and avenues. And as to all those portions of the proposed railways thus projected north of the Harlem river, comprising a considerable portion of the whole routes, no further or other statement is made than that north of the Harlem river the construction shall be by viaduct, depressed structure, and tunnel, as the grades of the land upon the proposed routes shall require. And it is urged that it is manifest that this statement can convey no information to any property owner along either of the routes above the Harlem river, and that to foresee what kind of a road is to be placed in front of his property he must know, not only the natural elevation of the ground, but the proposed elevation of the projected railroad, as to which the report gives him no information whatever, and that the profile drawings attached to the report do not in any way aid such investigation, and that no man owning property along either of the proposed routes above the Harlem river can form an approximate guess, much less an intelligent opinion, as to whether the proposed railroad is to be constructed on a viaduct in a depressed structure or in a tunnel, or at what distance below or above the street surface, and hence, as to his property, the report does not show the extent to which the streets, avenues, or public places may be encroached upon and the property abutting thereon affected. And objection is also raised as to the definiteness of the plan in reference to the character of the structure below the Harlem river.

It being impossible, within the limits of this opinion, to discuss in detail these various objections, we will confine ourselves to a general statement of what seems to be the answer thereto.   The report and plans show distinctly upon the south side of the Harlem river as to what portion of the railroad is to be a viaduct, tunnel, or depressed structure.   The report also gives the general dimensions of the tunnel, and its location, viz., that its depth below the surface shall be as near thereto as the present pipe-lines will allow, and the width and height are fixed.   As to that part which is to be upon a via-duct, the maps indicate the general character of the structure which it is proposed to erect in different locations.   The claim that the material of the viaduct is not definitely fixed, in that the report states that such viaduct was to be of masonry or iron or both, does not seem to be of any importance, in view of the fact that in the *Kings County El. Ry. Case* combined construc-tion of iron and stone was one of the essential features of the plan.

In respect to the indefiniteness of the general plans beyond the Harlem river, it is to be observed that the impossible is not required.   It is sufficient if the plans adopted by the commissioners shall disclose, as far as reasonably practicable, to what extent the streets are to be encroached upon, etc.   Now, it appears by chapter 545 of the Laws of 1890 that the grades of the streets and avenues beyond the Harlem river have not yet been fixed, and that they are not required to be fixed until within two years and six months from the 1st day of January, 1891, when the surface maps, plans, and profiles of all the streets, roads, avenues, public squares, and places located and laid out shall be filed.   It was evidently impossible for the commissioners to deter-mine what should be the precise location in reference to the surface of the avenues and streets upon which the route of this railroad was located when no grade of the street had ever been fixed.   They have done the best thing they could under the circumstances.   They show by their profile maps the general contour of the ground as it now exists, and the relative location of the proposed route between high-water mark and such surface.   What pre-cise portions of this route should be in a tunnel, depressed structure, or via-duct, depends entirely upon what grade shall be subsequently fixed for the street along which its route is located.

The further objection is urged that the precise height of the viaduct or de-pressed structure at each particular place is not shown.   It is evident, with-out the details of the engineer's specification for the building of the railroad, (which is not required in this general plan,) that no such nicety of location can possibly be given.   The report and accompanying maps afford every property owner the means of forming an opinion generally as to the extent to which this structure is to affect him.   In respect to the omission to locate the stations it would seem that the views of the court in the *Kings County El. Ry. Case* dispose of that question.   It is undoubtedly true that by reason of the platforms between the tracks where stations are located the encroach-ment will be greater than where such platforms do not exist.   But that it was necessary for the commissioners to locate these stations seems to be neg-atived by the views of the court in the case cited.   As has been seen, the requirements of the plan under the act of 1875 in this respect were substan-tially the same as that of the act of 1891, and the court, under the act of 1875, held that the location of stations by the commissioners as an element and detail of the plan might very properly, in the interest of the public, have been made and included, and the court therefore state that they cannot say that the omission was not a defect.   But when they come to measure the im-portance of such omission they expressly hold that it was not at all vital or even serious, because the property owners, when applied to for their consent, would understand that stations were requisite, and each would know that one might come in his own locality.   In the case at bar the plan was more

definite and explicit in regard to the encroachment of the station than it was in the case cited. The extent to which the tracks will be spread is definitely fixed, and it appears that the stations are not to be located in the street, but that access to the railway is to be gained through private property.

We next come to the question of the mode of operation; and it is claimed that the requirements of the commissioners in regard to the mode of operation are not sufficiently definite. The language of the act is that such general plan shall show the general mode of operation. The language of the report is to the effect that the cars shall be moved by motors capable of a uniform speed, for long distances, of not less than 40 miles per hour, exclusive of stops, the power being supplied by some method not requiring combustion within the tunnel. This designation excludes the cable and the locomotive as now operated. It provides that the cars shall be propelled by motors within the tunnel. The character of the power is not defined. That is left to be determined when the detailed plans are prepared. This, it seems to us, gives to the property owner information as to the general mode of operation. If it went further it would be giving the particular mode of operation, and where the general mode only is required it is not necessary to descend to the particular. Great stress is laid upon what is called the failure to show the manner of construction. The requirement of the act is that such general plan shall show the general mode of operation, and contain such details as to the manner of construction as may be necessary to show the extent to which any street, etc., is to be encroached upon. It is claimed that this requirement has not been complied with, and that the provisions of the report will not enable any property owner to form an intelligent judgment as to the effect likely to be produced upon his abutting property by the manner of construction of the railway. As has already been stated in respect to this language, it evidently was not the intention of the legislature that in this general plan all the details of construction, either as to manner, mode, or method, should be included. It may be that the use of the word "manner" in this connection was unfortunate, in that there is but little difference noted by lexicographers between the words "manner," "mode," and "method." But it is manifest what the intention of the legislature was in the use of this phraseology, and that was that the general plan should convey to the property owners along this route, in a general way, the manner in which this work of construction was to be carried on. It certainly was not the intention of the legislature to require the commissioners to determine in this report as to how every foot of earth was to be removed, or every detail of the work of construction was to be carried out; but, as already stated, to convey in a general way to the owners of property along the line of this route information as to the manner in which this construction should be carried on, in order that they might appreciate to some extent the inconvenience which they might suffer under during the period of construction, and it was evidently not the intention of the legislature that the plan in reference to the manner of construction should be all details and no generalities. We are to consider these two terms together. It is to be a general plan of construction, with certain details. If they had intended that this plan should convey to the abutting owner all the information which the subsequent plans provided for by section 6 were to convey, there would have been no necessity whatever for the provisions of section 6, and no necessity whatever for a general plan, but the requirements of the legislature would have been for a detail plan. Therefore, in the report, the commissioners have provided for the general manner of construction below Fourteenth street on the Fourth-Avenue side, and below Thirty-Fourth street on the Broadway side, namely, that it shall be by under-ground tunneling, without disturbing the streets, except in cases of necessity in certain localities, and such other special points as the commissioners during the prog-

ress of the work determine, and that all excavations in Fourth avenue above Fourteenth street, and all other streets and avenues above Thirty-Fourth street, may be made from the surface. The provision in the report in respect to the special points in no manner affects the general plan. It was evidently intended to show that the construction was to be carried on in certain localities by under-ground tunneling, and that, if insuperable obstacles existed at special points, then excavations might be made from the surface, and the commissioners were to determine that proposition. It is apparent, therefore, what the general manner of construction was to be in all parts of the road.

The claim that on Fourth avenue above Fourteenth street, and on all streets above Thirty-Fourth, the manner of construction is left wholly undetermined, it seems to us, is entirely unfounded. From the language of the report in respect to these localities the property owner is warned that the method of excavation most detrimental to him may be employed, viz., excavation from the surface. He has placed before him the worst feature in respect to the excavation, and that is all that is required under the principles laid down in the case of the *Kings County El. Ry. Co.,* above cited. We think, therefore, upon a consideration of these general plans, which have been submitted to the court upon this application for the appointment of commissioners, that they sufficiently comply with the provisions of the rapid transit act, and enabled the property owners to determine, in a general way, as to the extent to which their property may be encroached upon. We are of opinion, therefore, that the motion should be granted. All concur.